DIANNE STOCKTON, Plaintiff v. ESTATE OF TERRY DARNELL THOMPSON,
RANDY M.L. THOMPSON, Administrator, Defendant

No. COA03-749

(Filed 17 August 2004)

**Paternity— deceased father—other known children—intervention not allowed**

Those not listed in N.C.G.S. § 49-16 may not intervene in a paternity proceeding, and the trial court correctly denied a motion to intervene by the guardian of the other children of the deceased putative father.

Appeal by intervenor-appellant from orders entered 14 March and 28 March 2003 by Judge Beth S. Dixon in District Court, Rowan County. Heard in the Court of Appeals 4 March 2004.

*Woodson, Sayers, Lawther, Short, Parrott & Walker, LLP, by Sean C. Walker, for plaintiff-appellee Diane Stockton.*

*James L. "Jeremy" Carter, Jr., for defendant-appellee Estate of Terry Darnell Thompson.*

*Linwood O. Foust, for intervenor-appellant.*

McGEE, Judge.

The issue before this Court is whether a party not designated in N.C. Gen. Stat. § 49-16 may intervene in a civil paternity action commenced pursuant to N.C. Gen. Stat. § 49-14.

Terry Darnell Thompson (decedent) died on 1 September 2001 in a motorcycle accident. At the time of his death, decedent had two minor, legitimated daughters, Tekia C. Jordon and Tené Caroline Jordan (Tekia and Tené).

J.T. was born 1 March 2002 to Dianne Stockton (plaintiff), who was living with decedent at the time of decedent's death. Genetic testing conducted on decedent's brother and mother revealed a 99.96% probability that decedent was J.T.'s biological father. Prior to decedent's death, he repeatedly acknowledged that he was the father of J.T. and stated his intention to care for J.T.

A petition was filed by the administrator of decedent's estate on 7 August 2002 requesting that the trial court appoint guardians ad

litem for the known minor children of decedent, Tekia and Tené, and for decedent's known illegitimate child, J.T. The petition further requested that the trial court determine the status of the heirs to decedent's estate. The trial court appointed guardians ad litem on 7 August 2002 for all heirs at law noted in the administrator's petition. On 14 January 2003, the natural guardian of Tekia and Tené filed a response to the estate's petition in which the guardian alleged that the statute of limitations for J.T.'s paternity claim barred the action, and thus, Tekia and Tené were the sole heirs to decedent's estate. The guardian ad litem for J.T. filed an answer to the response. At the 5 February 2003 hearing regarding the estate's petition, the clerk of court held that Tekia and Tené were heirs to the estate, but the clerk deferred ruling as to J.T's status pending the resolution of a paternity action regarding J.T.

Plaintiff filed a paternity action on 5 February 2003 alleging that J.T. was the biological child of decedent. The guardian ad litem for Tekia and Tené filed a motion to intervene in the paternity action on 10 February 2003 in order to protect their pecuniary interest in decedent's estate. Tekia's and Tené's guardian ad litem also filed an answer to plaintiff's complaint asserting that the statute of limitations had passed for initiating a paternity action. In an order filed 14 March 2003, the trial court denied the motion to intervene and on 27 March 2003, the trial court denied Tekia's and Tené's guardian ad litem's motion for reconsideration of the motion to intervene. The guardian ad litem for Tekia and Tené appeals.

We first note that the trial court's order denying appellant's motion to intervene is interlocutory. *See generally Alford v. Davis,* 131 N.C. App. 214, 216, 505 S.E.2d 917, 919 (1998); *Veazey v. Durham,* 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950). The order in this case is interlocutory because the trial court had not disposed of the entire controversy among the parties. *United Services Automobile Assn. v. Simpson,* 126 N.C. App. 393, 395, 485 S.E.2d 337, 339 *disc. review denied,* 347 N.C. 141, 492 S.E.2d 37 (1997). Interlocutory orders are generally not subject to immediate appeal; however, "immediate appellate review is permitted pursuant to N.C. Gen. Stat. § 1-277 [2003] and N.C. Gen. Stat. § 7A-27(a) [2003], if the order adversely affects a substantial right which the appellant may lose if not granted an appeal before final judgment." *Id.; see also* N.C. Gen. Stat. § 1-277 (2003); N.C. Gen. Stat. § 7A-27 (2003).

By failing to address the interlocutory nature of the order in a brief to this Court, appellant violated N.C.R. App. P. 28(b)(4).

However, pursuant to N.C.R. App. P. 2, this Court elects, in its discretion, to hear the merits of appellant's argument. We conclude that appellant's motion to intervene involves a substantial right which would be irreparably impaired if the trial court's order was not reviewed prior to the trial court's final judgment in the underlying paternity action.

The paternity action regarding J.T. was filed pursuant to N.C. Gen. Stat. §§ 49-14 and 49-16 by J.T.'s biological mother. N.C. Gen. Stat. § 49-16 (2003) explicitly lists those individuals who have standing to participate in a paternity proceeding. Under the statute which is entitled, "Parties to proceeding," a paternity action may be brought by

> (1) The mother, the father, the child, or the personal representative of the mother or the child. [or]

> (2) When the child, or the mother in case of medical expenses, is likely to become a public charge, the director of social services or such person as by law performs the duties of such official[.]

N.C.G.S. § 49-16. It is logical to conclude that the General Assembly anticipated that the only defendant in a paternity proceeding would be the putative parent. N.C. Gen. Stat. § 49-14 (2003) provides for the procedure by which a civil action to establish paternity may be initiated by those specifically listed in N.C.G.S. § 49-16. "The primary goal of statutory construction is to effectuate the purpose of the legislature in enacting the statute." *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 574, 573 S.E.2d 118, 121 (2002). "When confronting an issue involving statutory interpretation, [an appellate court's] 'primary task is to determine legislative intent while giving the language of the statute its natural and ordinary meaning unless the context requires otherwise.' " *Spruill v. Lake Phelps Vol. Fire Dep't, Inc.*, 351 N.C. 318, 320, 523 S.E.2d 672, 674 (2000) (quoting *Turlington v. McLeod*, 323 N.C. 591, 594, 374 S.E.2d 394, 397 (1988)).

In *Smith v. Bumgarner*, 115 N.C. App. 149, 151, 443 S.E.2d 744, 745 (1994), this Court recognized that "[t]he legislative purpose of an action under G.S. § 49-14 is to provide the basis or means of establishing the identity of the biological father so that the child's right to support may be enforced and the child will not become a public charge." In *Smith*, our Court acknowledged that in enacting N.C.G.S. § 49-16, the General Assembly knowingly abrogated the common law and specifically listed those individuals and entities who may bring an

SPRINKLE v. N.C. WILDLIFE RES. COMM'N

[165 N.C. App. 902 (2004)]

action pursuant to N.C.G.S. § 49-14. *Smith,* 115 N.C. App. at 151-52, 443 S.E.2d at 745-46 ("If the legislature had intended to require the child to be joined as a necessary party in an action under G.S. § 49-14, then it would have specifically stated such[.]"). We conclude that the General Assembly, in explicitly listing who may be a party to a paternity proceeding pursuant to N.C.G.S. § 49-14, did not intend for others not set forth in the statute to intervene in such a paternity proceeding. To hold otherwise, would render ineffective the clear and unambiguous meaning of N.C.G.S. § 49-16. Thus, appellant's argument is without merit.

Affirmed.

Judges CALABRIA and STEELMAN concur.