653 S.E.2d 240 (2007)
In the Matter of L.B.
No. COA07-549.
Court of Appeals of North Carolina.
December 4, 2007.
Matthew J. Middleton, Asheville, for Buncombe County Department of Social Services, petitioner-appellee.
Jerry W. Miller, Asheville, for guardian ad litem.
Richard E. Jester, Louisburg, for mother, respondent-appellant.
*241 Hartsell & Williams, P.A. by Christy E. Wilhelm, Concord, for father, respondent-appellant.
JACKSON, Judge.
Opal and Ellis B. ("respondents") appeal the termination of their parental rights to their son, L.B., on 2 February 2007. For the reasons stated below, we dismiss the appeal.
On 13 February 2002, the Buncombe County Department of Social Services ("DSS") received a report concerning respondents' first child. Social workers visited respondents' home and found that it was inadequately maintained. The infant was in a drawer on the floor of a cold room, lying in his own urine. Respondent mother could not recall the last time the baby's diaper had been changed. She stated that he had last been fed six hours earlier. The social workers returned to the home the next day and found the doors and windows of the home open. Respondent mother could not remember the last time the baby's diaper had been changed or when he had last been fed. Respondents did not have a facility for bathing the child. The child was adjudicated a neglected child on 7 June 2002.
Respondents underwent psychological evaluations on 26 September 2002. Respondent mother's evaluation indicated she would be unlikely to "effectively raise a child without ongoing external supports present in the home." She was "prone to becoming cognitively confused, socially isolated, and potentially neglectful due to her limitations." Respondent father's evaluation indicated that he was "psychologically disconnected from the needs and feelings of others" and that during the evaluation "there was no expression of affection for his child or concerns for his needs." It concluded that given his psychological makeup, cognitive delays, and past history,[1] there was a high risk of abuse and neglect as a parent, should he be allowed around the child.
Respondents' parental rights as to their first child were terminated on 8 October 2003, upon findings that they had neglected the child and willfully left the child in foster care for more than twelve months. Respondents never appealed that order.
DSS obtained non-secure custody of L.B. on 27 October 2005, one day after birth, after receiving a report that respondents were having trouble caring for the infant. Respondents underwent new psychological evaluations on 28 April 2006, which disclosed that little had changed since the 2002 evaluations.
L.B. has special medical needs. He has acid reflux, which impacts his ability to swallow food. He also has poorly developed muscle tone and asthma. L.B. takes several medications that must be administered in precise amounts and at specific times throughout the day. The complexity of the medical care required for L.B. mandates that any person who cares for him must be attentive and able to understand the actions that must be taken to provide adequate care for him.
On 15 August 2006, DSS filed a petition to terminate respondents' parental rights as to L.B. A hearing was held on 6 and 7 December 2006. The trial court concluded that grounds existed to terminate respondents' parental rights in that (1) pursuant to North Carolina General Statutes, section 7B-1111(a)(6) they were incapable of providing the proper care and supervision of the child such that the child was dependent and there was a reasonable probability that such incapability would continue for the foreseeable future; and (2) pursuant to North Carolina General Statutes, section 7B-1111(a)(9) their parental rights to another child had been involuntarily terminated on 8 October 2003, and because of their significant cognitive and intellectual limitations they were unable to provide a safe home for L.B. Additionally, the court concluded that grounds existed to terminate respondent father's parental rights pursuant to North Carolina General Statutes, section 7B-1111(a)(1), in that he had neglected L.B. both before and after he came into *242 DSS custody. The court concluded that termination of respondents' parental rights was in L.B.'s best interests, and ordered respondents' parental rights terminated on 2 February 2007. Both parents appeal.
We first address a motion to dismiss the appeal which is pending before this Court. DSS argues that respondents' notices of appeal are not signed by respondents as required by Appellate Rule 3A(a). This rule governs appeals in juvenile cases and provides that "both the trial counsel and appellant must sign the notice of appeal[.]" N.C. R.App. P. 3A(a) (2007). The notices of appeal in the instant case were signed by trial counsel and the guardian ad litem ("GAL") for each respondent (appellant). The question we must decide is whether the signature of an appellant's GAL is a sufficient signature by the "appellant" as required by Rule 3A(a). We hold that it is not.
Respondents' GALs were appointed pursuant to North Carolina General Statutes, section 7B-1101.1, which permits the appointment of a GAL when a parent is suspected of having diminished capacity. See N.C. Gen. Stat. § 7B-1101.1 (2005). Chapter 35A of the North Carolina General Statutes also governs the appointment of guardians. Pursuant to Chapter 35A, a guardian shall be appointed for a party who has been adjudicated mentally incompetent. See N.C. Gen. Stat. § 35A-1120 (2005).
A GAL appointed pursuant to section 7B-1101.1 does not possess the same authority as a guardian appointed pursuant to Chapter 35A. "The essential purpose of guardianship [appointed pursuant to Chapter 35A] for an incompetent person is to replace the individual's authority to make decisions with the authority of a guardian when the individual does not have adequate capacity to make such decisions." N.C. Gen.Stat. § 35A-1201(a)(3) (2005) (emphasis added). In contrast, a GAL's authority is more limited. Pursuant to North Carolina General Statutes, section 7B-1101.1(e), a GAL "may engage in all of the following practices:" (1) helping the parent to enter consent orders, as opposed to entering consent orders on behalf of the parent; (2) facilitating service of process on the parent, as opposed to accepting service of process on behalf of the parent; (3) assuring that necessary pleadings are filed, as opposed to filing pleadings on behalf of the parent; and (4) assisting the parent, as opposed to acting on the parent's behalf, to ensure that the parent's procedural due process requirements are met. See N.C. Gen.Stat. § 7B-1101.1(e) (2005).
The dissent misconstrues our reading of section 7B-1101.1(e). We do not imply that a GAL's actions are limited to those enumerated in the statute. We acknowledge that prior to the enactment of section 7B-1101.1, a GAL's role in termination cases was unclear. See In re Shepard, 162 N.C.App. 215, 227, 591 S.E.2d 1, 9 (2004) ("North Carolina case law offers little guidance as to . . . any specific duties of a GAL assigned to a parent-ward in a termination proceeding."). This statute serves to clarify the GAL's role in these proceedings. However, the language of the General Assembly is clear that the GAL's role is limited to one of assistance, not one of substitution. The General Assembly could have stated that the GAL was authorized to enter consent orders, accept service of process, file pleadings, or otherwise act on a parent's behalf, but it did not.
In addition, the General Assembly amended the statutes regarding the appointment of GALs in termination proceedings effective 1 October 2005. With those revisions, there no longer is a requirement that parents be adjudicated incompetent pursuant to Chapter 35A in order to have a GAL appointed.
Pursuant to former section 7B-1101, when the termination petition was based on section 7B-1111(6), alleging the parent was incapable of caring for the child, and the incapability was the result of substance abuse, mental retardation, mental illness, organic brain syndrome, or another similar cause or condition, the trial court was required to appoint a GAL in accordance with Rule 17 of the North Carolina Rules of Civil Procedure to represent the parent. See N.C. Gen.Stat. §§ 7B-1101, 7B-1111(6) (2004). "Chapter 35A of the general statutes sets forth the procedure for determining incompetency, which the trial judge must comply with when conducting a competency hearing under Rule 17." In re *243 J.A.A. & S.A.A., 175 N.C.App. 66, 73, 623 S.E.2d 45, 49 (2005).
In its 2005 revisions to Chapter 7B, the General Assembly retained the requirement that the appointment of a GAL be in accordance with Rule 17 only when the parent is under the age of eighteen years. See N.C. Gen.Stat. § 7B-1101.1(b) (2005). Pursuant to the current section 7B-1101.1, the court may appoint a GAL to represent a parent having only a reasonable basis to believe that the parent is incompetent or has diminished capacity and cannot adequately act in his or her own interest. See N.C. Gen.Stat. § 7B-1101.1(c) (2005). This threshold is significantly lower than that required for appointment of a guardian pursuant to the requirements of Chapter 35A.
A proceeding to declare an individual incompetent and appoint a guardian pursuant to Chapter 35A is much more complex. The party seeking appointment of a guardian and the party for whom the guardian is sought both are entitled to present testimony and documentary evidence, to subpoena witnesses and the production of documents, and to examine and cross-examine witnesses in regard to the party's competence. N.C. Gen. Stat. § 35A-1112(b) (2005). The party for whom the guardian is sought is entitled to be represented by counsel of his own choice or by an appointed GAL. N.C. Gen.Stat. § 35A-1107(a) (2005). Should a GAL be appointed pursuant to North Carolina General Statutes, section 35A-1107(a), the GAL "shall make every reasonable effort to determine the respondent's wishes regarding the incompetency proceeding and any proposed guardianship." N.C. Gen.Stat. § 35A-1107(b) (2005) (emphasis added). The party for whom the guardian is sought is entitled to a trial by jury. N.C. Gen.Stat. § 35A-1110 (2005). He may appeal to the superior court for a hearing de novo. N.C. Gen.Stat. § 35A-1115 (2005).
There is no evidence that the General Assembly intended the GAL  as it did the guardian  to exercise legal rights in lieu of the respondent parents as the dissent attempts to argue. Rather, the language of section 7B-1101.1 plainly indicates the role of the GAL is to assist the parents rather than replace their authority to undertake acts of legal import themselves. See In re Shepard, 162 N.C.App. at 227, 591 S.E.2d at 9 (the role of the GAL is to "assist in explaining and executing" the parent's rights). Therefore, although it is appropriate for the GAL to assure that the notice of appeal  or other pleading or legal document  is filed properly with the parents' signatures as required by North Carolina Rules of Appellate Procedure 3A(a), it is not appropriate for the GAL to sign the notice of appeal in place of the parents.
Furthermore, pursuant to North Carolina General Statutes, section 7B-1001(b), written notice of appeal is to be given "by a proper party as defined in G.S. 7B-1002." N.C. Gen.Stat. § 7B-1001(b) (2005). Such proper parties are (1) a juvenile who is acting through his GAL; (2) a juvenile without a GAL, in which case "the court shall appoint [one] pursuant to G.S. 1A-1, Rule 17"; (3) DSS; (4) "a parent, a guardian appointed under G.S. 7B-600 [for a juvenile] or Chapter 35A of the General Statutes [for a parent], or a custodian as defined in G.S. 7B-101 who is a nonprevailing party"; and (5) any party who was unsuccessful in obtaining a termination of parental rights. N.C. Gen.Stat. § 7B-1002 (2005). Nowhere in section 7B-1002 is a parent's GAL designated as a "proper party" who may give written notice of appeal pursuant to section 7B-1001.
In Stockton v. Estate of Thompson, 165 N.C.App. 899, 600 S.E.2d 13 (2004), this Court held that a GAL appointed for decedent's two legitimated children had no statutory authority to intervene in a paternity proceeding initiated by the mother of decedent's illegitimate child. Id. at 902, 600 S.E.2d at 16 ("We conclude that the General Assembly, in explicitly listing who may be a party to a paternity proceeding . . ., did not intend for others not set forth in the statute to intervene in such a paternity proceeding. To hold otherwise, would render ineffective the [statute's] clear and unambiguous meaning.") Similarly, by explicitly listing who may give written notice of appeal in Chapter 7B cases, the General Assembly did not intend for those not listed to have the right to perfect an appeal.
*244 Appellate Rule 3A became effective 1 May 2006 and applies to all cases appealed on or after that date. Therefore we are faced with a case of first impression interpreting this new requirement. However, "[a]ppellate Rule 3 [governing notice of appeal for civil cases] is jurisdictional and if the requirements of this rule are not complied with, the appeal must be dismissed." Currin-Dillehay Bldg. Supply v. Frazier, 100 N.C.App. 188, 189, 394 S.E.2d 683, disc. rev. denied, 327 N.C. 633, 399 S.E.2d 326 (1990) (citing Giannitrapani v. Duke University, 30 N.C.App. 667, 670, 228 S.E.2d 46, 48 (1976)). Similarly, "when a [criminal] defendant has not properly given notice of appeal [pursuant to Rule 4 governing notice of appeal for criminal cases], this Court is without jurisdiction to hear the appeal." State v. McCoy, 171 N.C.App. 636, 638, 615 S.E.2d 319, 320 (2005) (citing State v. McMillian, 101 N.C.App. 425, 427, 399 S.E.2d 410, 411, disc. rev. denied, 328 N.C. 335, 402 S.E.2d 842 (1991)). Because Appellate Rules 3, 3A, and 4 all concern how and when appeals are to be taken, Rule 3A is similarly jurisdictional, and if not complied with, the appeal must be dismissed.
Because we hold that a GAL's signature on the notice of appeal is not sufficient to grant this Court jurisdiction, we cannot address the merits of the appeal. Accordingly, we dismiss the matter.
DISMISSED.
Judge STEELMAN dissents in a separate opinion.
Judge STROUD concurs.
STEELMAN, Judge, dissenting.
I must respectfully dissent from the majority opinion.
"[T]he appointment of a guardian ad litem will divest the parent of their fundamental right to conduct his or her litigation according to their own judgment and inclination." In re J.A.A., 175 N.C.App. 66, 71, 623 S.E.2d 45, 48-49 (2005) (citation omitted). The effect of the majority opinion in this matter is to convert guardians ad litem appointed for parents under N.C. Gen.Stat. § 7B-1101.1 into nothing more than glorified hand-holders during termination of parental rights proceedings. I do not believe that this was the intent of the General Assembly.

I. Structure of N.C. Gen.Stat. § 7B-1101.1
Prior to the enactment of 2005 N.C. Sess. Laws 398, the District Court was required to appoint a guardian ad litem for a parent in a termination of parental rights proceeding where there was an allegation that the parental rights be terminated pursuant to N.C. Gen.Stat. § 7B-1111(6) and the incapability to provide proper care for the child was the result of "substance abuse, mental retardation, mental illness, organic brain syndrome, or another similar cause or condition." N.C. Gen.Stat. § 7B-1101(1) (2005).
Sections 14 and 15 of 2005 N.C. Sess. Laws 398 (effective for petitions filed after 1 October 2005) deleted the portions of N.C. Gen. Stat. § 7B-1101 pertaining to appointments of guardians ad litem, and replaced them with a new statute, N.C. Gen. Stat. § 7B-1101.1. This statute provided that appointment of a guardian ad litem for parents under the age of 18 years who were not married or otherwise emancipated was to be in accordance with the provisions of Rule 17 of the North Carolina Rules of Civil Procedure subsection (b). It further provided for appointment of a guardian ad litem for an adult parent "if the court determines that there is a reasonable basis to believe that the parent is incompetent or has diminished capacity and cannot adequately act in his or her own interest." N.C. Gen.Stat. § 7B-1101.1(c) (emphasis added). Finally, subsection (e) provides that:
Guardians ad litem appointed under this section may engage in all of the following practices:
1) Helping the parent to enter consent orders, if appropriate.
2) Facilitating service of process on the parent.
3) Assuring that necessary pleadings are filed.
4) Assisting the parent and the parent's counsel, if requested by the parent's counsel, to ensure that the parent's *245 procedural due process requirements are met.
N.C.G.S. § 7B-1101.1(e).
The majority opinion makes several erroneous conclusions concerning this statute. First, it states that the authority of a guardian ad litem appointed under N.C. Gen.Stat. § 7B-1101.1 is limited to powers set forth in subsection (e). This is not correct. Subsection (e) states that guardians "may engage in all of the following practices . . ." The purpose of this subsection is not to limit the powers of the guardian ad litem, but rather to emphasize the role of a guardian ad litem in these proceedings as "a guardian of procedural due process for [the] parent, to assist in explaining and executing her rights." In re Shepard, 162 N.C.App. 215, 227, 591 S.E.2d 1, 9 (2004). Rather than limiting the powers of a guardian ad litem, subsection (e) merely assists in defining the role of the guardian in the peculiar circumstances of a termination of parental rights proceeding.
Second, the majority places emphasis upon the different procedures for appointment of a guardian ad litem for minors and adults set forth in subsections (b) and (c) of N.C. Gen. Stat. § 7B-1101.1. Under subsection (b), for minors, the appointment procedure is pursuant to Rule 17 of the Rules of Civil Procedure. The reason for this procedure is obvious. Minors are presumed by law not to have the requisite capacity to handle their own affairs. See In re Clark, 303 N.C. 592, 281 S.E.2d 47 (1981). Based upon this presumption, there is no requirement of a hearing under Rule 17 for the appointment of a guardian ad litem for minors.
The situation is different for an adult, and this is clearly recognized by subsection (c). A guardian ad litem can only be appointed if there is a determination that the parent is "incompetent" or has "diminished capacity." This subsection clearly contemplates a hearing before a guardian ad litem can be appointed. The 2005 statute did away with the provision requiring that a guardian "shall be appointed" where an allegation of incapability is contained in the petition. As noted in J.A.A., prior to the appointment of a guardian ad litem for an adult parent, the trial court should conduct a hearing and "must determine whether the parents are incompetent within the meaning of N.C. Gen.Stat. § 35A-1101[.]" In re J.A.A., 175 N.C.App. at 71, 623 S.E.2d at 48.

II. Application to Instant Case
The fundamental misconception of the majority is that the guardians ad litem in this case were appointed in a manner inconsistent with the provisions of Chapter 35A. I freely acknowledge that the General Assembly could have drafted the provisions of Chapter 35A, Rule 17, and N.C. Gen.Stat. § 7B-1101.1 with more clarity, precision, and guidance as to how they are to interact with each other. However, I must assume that the General Assembly was aware of the provisions of Chapter 35A and Rule 17 at the time of the enactment of N.C. Gen.Stat. § 7B-1101.1, and that they intended for the provisions to work together. See State ex rel. Utilities Comm. v. Thornburg, 84 N.C.App. 482, 485, 353 S.E.2d 413, 415 (1987).
The record in this case is devoid of any information as to the procedure used by the trial court in the appointment of the guardians ad litem for the parents. The only thing that appears in the record is the order of appointment. In the absence of anything in the record to the contrary, I must assume that the order of appointment, regular on its face, was properly entered. See Fungaroli v. Fungaroli, 51 N.C.App. 363, 368, 276 S.E.2d 521, 524 (1981). I further note that petitioner makes no argument that the order of appointment was not properly entered. I would thus conclude that the order of appointment was properly entered in accordance with the provisions of both Chapter 35A and N.C. Gen.Stat. § 7B-1101.1.

III. Powers of the Guardian Ad Litem
The majority opines that the powers of a guardian ad litem are limited and do not encompass the authority to execute the notice of appeal in this matter. This misconstrues the nature of a guardian ad litem. It is true that a guardian ad litem's powers are limited; they are limited to acting on behalf of the parent in the context of the termination of parental rights proceeding. Once that proceeding is concluded, so is the role of the guardian ad litem.
*246 However, in the context of the termination of parental rights proceedings, the guardian has full authority to act on behalf of the parent. The reason for the appointment is that the "parent is incompetent or has diminished capacity and cannot adequately act in his or her own interest." N.C. Gen.Stat. § 7B-1101.1(c) (2005). The majority would have a guardian ad litem appointed, but require that the incompetent person or a person of diminished capacity act on his or her own behalf in making all of the fundamental decisions concerning the litigation proceedings, including deciding whether to appeal the case.
I would conclude that it was not the intent of the General Assembly to create a separate class of guardians ad litem for adult parents in termination of parental rights proceedings that have no legal authority, and are reduced to the role of holding the parent's hand during the proceeding. There is no more important proceeding in our court system than one where the relationship between a parent and child is forever torn asunder. I would hold that guardians ad litem of parents who are incompetent or of diminished capacity are fully empowered to act on their behalf, including the authority to execute a notice of appeal on their behalf pursuant to Rule 3A of the North Carolina Rules of Appellate Procedure.
I would deny DSS's motion to dismiss respondents' appeal based upon the failure of respondents to sign the notice of appeal, and I would reach the merits of respondents' appeal.

IV. Delay in Entry of Orders
Respondents both argue the trial court erred by failing to enter a written order within 30 days after completion of the termination of parental rights hearing as required by N.C.G.S. § 7B-1109(e) and by failing to enter a permanency planning order within thirty days after the hearing as required by N.C.G.S. § 7B-907(c). I disagree.
This Court has held that a trial court's violation of statutory time limits in a juvenile case is not reversible error per se; instead, the complaining party must articulate the prejudice arising from the delay in order to justify reversal. In re S.N.H. & L.J.H., 177 N.C.App. 82, 86, 627 S.E.2d 510, 513 (2006) (citations omitted). Respondents have not demonstrated any prejudice resulting from the delays of twenty-five days in filing the termination order and of five days in filing the permanency planning order. This argument is without merit.

V. Mother's Appeal
Mother contends that the court's findings of fact and conclusions of law are not supported by adequate evidence. Mother further argues that "[t]he trial court erred in its conclusions of law . . . in that they are not supported by competent evidence and are not legally correct." I disagree.
The process of terminating parental rights has two stages. In re Blackburn, 142 N.C.App. 607, 610, 543 S.E.2d 906, 908 (2001) (citation omitted). The first stage is the adjudicatory stage, in which "the petitioner has the burden of establishing by clear and convincing evidence that at least one of the statutory grounds listed in N.C.G.S. § 7B-1111 exists." In re Anderson, 151 N.C.App. 94, 97, 564 S.E.2d 599, 602 (2002) (citation omitted). Appellate review of the order terminating parental rights is limited to whether the findings of fact are supported by clear, cogent and convincing evidence, and whether the findings in turn support the court's conclusions of law. In re McMillon, 143 N.C.App. 402, 408, 546 S.E.2d 169, 174 (2001) (citations omitted). Findings of fact not challenged on appeal are binding on the appellate court. State v. Baker, 312 N.C. 34, 37, 320 S.E.2d 670, 673 (1984) (citation omitted).
If the court determines that at least one ground for termination exists, it moves to the dispositional stage, and must consider whether terminating parental rights is in the best interests of the child. Blackburn, 142 N.C.App. at 610, 543 S.E.2d at 908. Our review of the court's determination regarding the child's best interests is for abuse of discretion. Anderson, 151 N.C.App. at 98, 564 S.E.2d at 602 (citation omitted).
Mother's primary argument is that the Americans with Disabilities Act and Adoption and Safe Families Act required DSS to take affirmative and pro-active steps to assist a *247 mentally retarded parent in caring for a child.
However, this argument does not correspond to any of mother's assignments of error. Appellate review is "limited to the issues presented by assignments of error set out in the record on appeal; where the issue presented in the appellant's brief does not correspond to a proper assignment of error, the matter is not properly considered by the appellate court." Bustle v. Rice, 116 N.C.App. 658, 659, 449 S.E.2d 10, 11 (1994) (citation omitted). Additionally, this issue was not presented to the trial court. A party will not be allowed to raise an issue for the first time on appeal. In re Crawford, 134 N.C.App. 137, 142, 517 S.E.2d 161, 164 (1999). Finally, in In re C.M.S., ___ N.C.App. ___, 646 S.E.2d 592 (2007), we held that the Americans with Disabilities Act does not prohibit the termination of parental rights of a mentally handicapped parent. This argument should be dismissed.
Although mother assigned error to various findings of fact, she did not argue them in her brief, and those which were not argued are deemed abandoned pursuant to N.C.R.App. P. 28(b)(6). As to the remainder, mother does not expressly argue that these findings are not supported by clear, cogent and convincing evidence, but instead makes the argument discussed above.
Finally, mother contends that the court erred during the dispositional stage in failing to expressly state its consideration of the factors listed in N.C.G.S. § 7B-1110 regarding the determination of the best interests of the child. However, there is no requirement that the trial court make findings of fact during the dispositional stage, Blackburn, 142 N.C.App. at 613, 543 S.E.2d at 910, and I would hold there was no error committed by the trial court. In making its determination of L.B.'s best interests, the court considered the arguments of counsel, as well as DSS's evidence regarding the child's special medical needs. Mother does not allege an abuse of discretion, and I would find none.
I would affirm the termination of mother's parental rights in the minor child L.B.

VI. Father's Appeal
Father first contends that findings of fact numbers 6, 12-14, 17, 19, and 21-22 are not supported by clear, cogent and convincing evidence. I disagree.
In finding of fact number 6, the court found that the parties consented to continuation of the termination hearing until the week of court commencing 4 December 2006. Father argues there is no evidence of consent.
N.C.G.S. § 7B-1109(d) allows the court to continue, with or without the parties' consent, the termination hearing beyond the 90-day period.
While the order continuing the hearing does not explicitly state that continuance was with the consent of the parties, the finding is not without support in the record. The order states that a necessary witness could not be present at the next available date, which was within the 90-day period, and that the next date that all of the parties could be present was the date on which the termination hearing was actually heard. Nothing in the record shows that respondents objected to the continuance at the time it was entered. I further note that the statute does not require consent of the parties for a continuance to be granted. This argument is without merit.
Father next challenges certain findings of fact on the ground they are not actually findings of fact but recitations of evidence. I would disagree.
An "adjudicatory order shall be in writing and shall contain appropriate findings of fact and conclusions of law." N.C.G.S. § 7B-807(b) (2005). The court's findings in an adjudicatory order "must be more than a recitation of allegations[]" and must include sufficient ultimate facts for this Court to determine whether the order is supported by evidence. Anderson, 151 N.C.App. at 97, 564 S.E.2d at 602. "Ultimate facts are the final facts required to establish the plaintiff's cause of action or the defendant's defense; and evidentiary facts are those subsidiary facts required to prove the ultimate facts." Woodard v. Mordecai, 234 N.C. 463, 470, 67 S.E.2d 639, 644 (1951). "An ultimate fact is *248 the final resulting effect which is reached by processes of logical reasoning from the evidentiary facts." Id. at 472, 67 S.E.2d at 645 (citations omitted). "There is nothing impermissible about describing testimony, so long as the court ultimately makes its own findings, resolving any material disputes." In re C.L.C., 171 N.C.App. 438, 446, 615 S.E.2d 704, 708 (2005), aff'd per curiam and disc. review improvidently allowed, 360 N.C. 475, 628 S.E.2d 760 (2006).
I have examined the challenged findings of fact. These findings refer to prior orders entered in this matter, as well as reports and evaluations prepared and conducted by a psychologist and a social worker, all of which are evidentiary facts. After noting these evidentiary facts, the court then made an ultimate finding of fact. A representative example of such finding is finding of fact number 17, in which the court incorporated by reference a copy of the psychological evaluations the parents underwent on 28 April 2006. The court summarized the evaluations and then made an ultimate finding of fact that:
The court finds that the respondent father has purposefully chosen not to follow the recommendations of the psychological evaluations that were designed to decrease risk to the minor child. The court finds that the cognitive and intellectual limitations and anger management issues are substantially the same on the date of this Termination hearing as when the Department became involved with the respondent father in 2002 and that these limitations are likely to continue into the foreseeable future.
I would overrule this assignment of error.
Father next contends that the court erred in relying upon hearsay and other incompetent evidence, namely the psychological assessment reports, in making its findings of fact. I disagree.
In challenging an alleged erroneous evidentiary ruling in a juvenile proceeding, "an appellant must show that the court relied on the incompetent evidence in making its findings." In re Huff, 140 N.C.App. 288, 301, 536 S.E.2d 838, 846 (2000), appeal dismissed and disc. review denied, 353 N.C. 374, 547 S.E.2d 9 (2001) (citation omitted). If there is competent evidence in the record to support the court's findings, "we presume that the court relied upon it and disregarded the incompetent evidence." Id.
There is ample competent evidence in the testimony of the psychologist and social workers who conducted the evaluations and prepared the reports to support the court's findings of fact. I would overrule this assignment of error.
In his next argument, father contends that the trial court considered inappropriate evidence in making its findings of fact, and that its conclusions of law are not supported by its findings of fact, including its determination of L.B.'s best interests. I disagree.
Having concluded that the court did not rely upon inappropriate evidence in making its findings of fact, I would hold that the trial court's findings support its conclusions of law. Although father alleges the court's determination of the child's best interest "is unsupported by appropriate findings of fact," he does not assert abuse of discretion, and I would find none. This argument is without merit, and I would affirm the termination of father's parental rights in the minor child L.B.
Father's final argument is that the court erred in failing to conduct the termination hearing within 90 days after the filing of the petition. I would disagree.
The trial court's failure to conduct a termination hearing within 90 days from the filing of the petition as required by N.C.G.S. § 7B-1109(a) will not result in reversal of the order unless the complaining party can demonstrate prejudice resulting from the delay. In re S.W., 175 N.C.App. 719, 722, 625 S.E.2d 594, 596, disc. review denied, 360 N.C. 534, 635 S.E.2d 59 (2006).
Here, no prejudice resulting from the hearing being held approximately three weeks after the 90 days had expired has been shown. This argument is without merit.
Father does not argue his fourth assignment of error in his brief, and acknowledges that the argument has been rendered moot due to the inclusion of page 16 of the Record *249 of Appeal. Mother's identical assignment of error is likewise moot.

VII. Conclusion
I would hold that the guardians ad litem were authorized to sign the notice of appeal on behalf of each of the parents.
I would further affirm the order of the trial court terminating the parents' parental rights to the minor child L.B.
NOTES
[1] Respondent father has an extensive criminal history dating back to 1972. He pled guilty in 1979 to raping a child under the age of twelve. He also has convictions in 1999 of assault on a female and assault on a child under the age of twelve. He violated a domestic violence protective order in 2000.