An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-399

Filed: 15 September 2015

Iredell County, Nos. 12 JT 47, 48, 49

IN THE MATTER OF: X.G.M., C.S.L.B., S.M.B., JR., Minor Children.

Appeal by respondent from order entered 7 November 2014 by Judge H. Thomas Church in Iredell County District Court. Heard in the Court of Appeals 17 August 2015.

> *Lauren Vaughan for petitioner-appellee.*
>
> *Blackburn & Tanner, by James E. Tanner III, for respondent-appellant.*
>
> *Melanie Stewart Cranford for guardian ad litem-appellee.*

GEER, Judge.

Respondent father appeals from an order terminating his parental rights as to juveniles C.S.L.B. ("Carl," born March 2009) and S.M.B., Jr. ("Sam," born February 2008).[1] Although the trial court also terminated the parental rights of the juveniles' mother, she is not a party to this appeal. Because, however, respondent father failed to file a timely and proper notice of appeal, we are without jurisdiction over the appeal and must dismiss it.

---

[1]The pseudonyms "Carl" and "Sam" are used to protect the identities of the minor children and for ease of reading.

Facts

On 13 March 2012, the Iredell County Department of Social Services ("DSS") obtained nonsecure custody of Carl, Sam, and their newborn brother X.M.[2] and filed petitions alleging that they were neglected juveniles. The children's mother and respondent father were both detained in Rowan County Jail. Respondent father had pending charges of felony obtaining property by false pretenses and multiple drug offenses. Following a hearing on 17 April 2012, the juveniles were adjudicated neglected pursuant to an order entered on 27 June 2012, based on respondent parents' substance abuse and related criminal activity, as well as issues of domestic violence and lack of stable housing.

After the juveniles came into DSS' custody, respondent father refused to disclose his whereabouts to DSS and continued to use drugs and accrue criminal charges. The trial court's initial "Disposition Order" entered 18 July 2012 required respondent father to enter into and comply with a DSS case plan; cooperate with DSS and the guardian ad litem; complete substance abuse and domestic violence assessments and comply with any recommended treatment; submit to random drug screens and refrain from illegal drug use; not incur any additional criminal charges; and maintain stable, appropriate housing. DSS was ordered to make reasonable reunification efforts.

---

[2]A paternity test requested by respondent father revealed that X.M. was not his child.

After a hearing held 4 December 2012, however, the trial court ceased DSS' reunification efforts and established a permanent plan of adoption for the juveniles based on findings that included the following:

> 11.  That the Respondent Father . . . is currently residing in Rowan County, but has not disclosed his address. . . .
>
> 12.  That the Respondent Father . . . completed a substance abuse assessment but has not followed up with treatment.  He continues to admit he smokes marijuana on a regular basis.
>
> 13.  That the Respondent Father . . . has numerous pending felony criminal charges.
>
> 14.  That the Respondent Father . . . is unemployed.

The trial court held a permanency planning hearing on 30 April 2013 and found that respondent father had been out of contact with DSS since the previous hearing and had been sentenced to prison for 44 to 56 months on 22 February 2013. After a hearing held 30 July 2013, the court found that respondent father remained incarcerated and had "not contacted [DSS] to inquire about the juveniles' well-being or to request visitation or other contact with them."

DSS filed petitions for termination of respondent father's parental rights on 22 October 2013.  After a hearing on 15 and 16 July 2014, the trial court concluded that grounds existed to terminate respondent father's parental rights based on (1) neglect, (2) failure to make reasonable progress to eliminate the conditions that led to the

juveniles' removal from the home, and (3) dependency. *See* N.C. Gen. Stat. § 7B-1111(a)(1), (2), (6) (2013). The court further determined that termination of respondent father's parental rights was in the juveniles' best interests.

Although counsel for respondent father filed a notice of appeal on 2 December 2014, the notice did not include respondent father's signature. On 17 December 2014, DSS filed with the trial court a motion to dismiss respondent father's appeal on the basis that it lacked respondent father's signature. That same day, counsel for respondent father filed an amended notice of appeal that included respondent father's signature. On 4 February 2015, DSS voluntarily dismissed its motion to dismiss.

## Discussion

We must first address whether respondent father's appeal is properly before this Court. DSS' motion to dismiss in the trial court was based on a violation of Rule 3.1 of the Rules of Appellate Procedure. Although DSS voluntarily dismissed its motion to dismiss, " '[s]ubject matter jurisdiction may not be waived, and this Court has the power *and the duty* to determine issues of jurisdiction *ex mero motu*[.]' " *In re C.N.C.B.*, 197 N.C. App. 553, 555, 678 S.E.2d 240, 241 (2009) (quoting *In re Will of Harts*, 191 N.C. App. 807, 809, 664 S.E.2d 411, 413 (2008)).

As our Supreme Court has explained, "[c]ompliance with the [R]ules [of Appellate Procedure] . . . is mandatory." *Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co.*, 362 N.C. 191, 194, 657 S.E.2d 361, 362 (2008). Further, "[a]

jurisdictional default . . . precludes the appellate court from acting in any manner other than to dismiss the appeal." *Id.* at 197, 657 S.E.2d at 365. "The appellant's compliance with the jurisdictional rules governing the taking of an appeal is the linchpin that connects the appellate division with the trial division and confers upon the appellate court the authority to act in a particular case." *Id.*, 657 S.E.2d at 364-65.

The taking of an appeal from an order terminating parental rights is governed by Rule 3.1(a) of the Rules of Appellate Procedure:

> Any party entitled by law to appeal from a trial court judgment or order rendered in a case involving termination of parental rights and issues of juvenile dependency or juvenile abuse and/or neglect, appealable pursuant to [N.C. Gen. Stat. §] 7B-1001, may take appeal by filing notice of appeal with the clerk of superior court and serving copies thereof upon all other parties in the time and manner set out in Chapter 7B of the General Statutes of North Carolina. Trial counsel or an appellant not represented by counsel shall be responsible for filing and serving the notice of appeal in the time and manner required. If the appellant is represented by counsel, both the trial counsel and appellant must sign the notice of appeal, and the appellant shall cooperate with counsel throughout the appeal.

As respondent father failed to affix his signature to the initial notice of appeal, respondent father failed to comply with Rule 3.1(a). *See In re I.T.P-L.*, 194 N.C. App. 453, 460, 670 S.E.2d 282, 285 (2008) (noting notice of appeal by respondent from order terminating parental rights was "incomplete" when it lacked respondent's signature).

We note that this Court recognized in *Stephenson v. Bartlett*, 177 N.C. App. 239, 241, 628 S.E.2d 442, 443 (2006) (quoting *Von Ramm v. Von Ramm*, 99 N.C. App. 153, 156, 392 S.E.2d 422, 424 (1990)), that " '[w]e may liberally construe a notice of appeal . . . to determine whether it provides jurisdiction.' " Thus, " 'if a party technically fails to comply with procedural requirements in filing papers with the court, the court may determine that the party complied with the rule [governing the manner for taking appeal] if the party accomplishes the "*functional equivalent*" of the requirement.' " *Id.*, 628 S.E.2d at 443-44 (quoting *Von Ramm*, 99 N.C. App. at 157, 392 S.E.2d at 424). The question then is whether, despite respondent father's failure to sign the initial notice of appeal, this Court may liberally construe that purported notice as the functional equivalent of a notice of appeal, or whether respondent father's default was jurisdictional.

In its motion to dismiss, DSS argues that respondent father's failure to sign the initial notice of appeal was a jurisdictional default, citing *In re L.B.*, 187 N.C. App. 326, 653 S.E.2d 240 (2007), *aff'd per curiam*, 362 N.C. 507, 666 S.E.2d 751 (2008) in support of its position. In *In re L.B.*, the respondents appealed a decision terminating their parental rights, and their trial counsel filed timely notices of appeal for them. *Id.* at 328, 653 S.E.2d at 242. The respondents' trial counsel, as well as the respondents' guardians ad litem that the trial court had appointed for them, signed the notices of appeal, although the respondents did not. *Id.* The petitioner filed a

motion to dismiss, arguing that the respondents had violated Rule 3A(a) of the Rules of Appellate Procedure, which at the time governed the taking of appeals from orders terminating parental rights and required that " 'both the trial counsel and appellant must sign the notice of appeal[,]' " despite the signatures of the guardians ad litem on the notices of appeal. 187 N.C. App. at 328, 653 S.E.2d at 242 (quoting N.C.R. App. P. 3A(a)). This Court held that the respondents' failure to sign their notices of appeal violated Rule 3A, and, moreover, the signature of the guardian ad litem "on the notice of appeal is not sufficient to grant this Court jurisdiction[.]" *Id.* at 328, 332, 653 S.E.2d at 242, 244. This Court dismissed the appeal, *id.* at 332, 653 S.E.2d at 244, and the Supreme Court affirmed the dismissal without discussion, 362 N.C. at 507, 666 S.E.2d at 751.

*In re L.B.* controls how we construe respondent father's 2 December 2014 notice of appeal. Here, as in that case, the rule governing taking appeals from orders terminating parental rights, Rule 3.1(a), provides that "both the trial counsel and appellant must sign the notice of appeal[.]" The failure of respondent father to sign the notice of appeal is, pursuant to *In re L.B.*, a jurisdictional default. *See also In re I.T.P-L.*, 194 N.C. App. at 459, 670 S.E.2d at 285 (dismissing timely but improper appeal that violated requirement that respondent parent sign notice of appeal).

Given that respondent subsequently filed an amended notice of appeal on 17 December 2014 that complied with the signature requirement, the question remains

whether the second notice of appeal was timely. The Supreme Court has "final authority" over "question[s] of appellate procedure," *Duke Power Co. v. Winebarger*, 300 N.C. 57, 69, 265 S.E.2d 227, 234 (1980), and through Rule 3.1(a), the Supreme Court has expressly recognized the authority of the legislature to govern the manner of taking appeal from orders terminating parental rights through Chapter 7B of the General Statutes, including the time for taking appeal.

Under N.C. Gen. Stat. § 7B-1001(b) (2013), respondent had "30 days after entry and service of the order" terminating his parental rights to file a timely appeal. *See also In re E.M.*, 202 N.C. App. 761, 763, 692 S.E.2d 629, 630 (2010) ("[F]or notice of appeal in this case [appealing from a termination of parental rights order] to have been timely, it must have been filed and served within 30 days after service of the order[.]"). As the record indicates that respondent father was served the order on 14 November 2014, respondent father had until the end of the day on 15 December 2014 to file an amended notice of appeal. *See* N.C.R. App. P. 27(a). Respondent father's amended notice of appeal filed 17 December 2014 was, therefore, untimely. "As proper and timely notice of appeal is jurisdictional, we must dismiss [respondent's] appeal." *In re I.T.P-L.*, 194 N.C. App. at 459, 670 S.E.2d at 285.

DISMISSED.

Judges STROUD and TYSON concur.

Report per Rule 30(e).