IN RE ASBURY

[125 N.C. App. 143 (1997)]

———————

IN RE: NETRICA ASBURY, A MINOR CHILD

No. COA96-260

(Filed 7 January 1997)

1. **Adoption or Placement for Adoption § 57 (NCI4th)— DSS custody—change of foster homes for adoption—trial court not authorized to interfere**

   Where legal and physical custody of a child vested in the DSS upon termination of the parental rights of her parents, the DSS was authorized to proceed in its discretion with placing the child for adoption, and the trial court had no authority to interfere with the DSS's decision to remove the child from the current foster home and to place her in another foster home for possible adoption.

   **Am Jur 2d, Administrative Law §§ 478-480; Adoption §§ 77, 94, 95.**

**2. Adoption and Placement for Adoption § 57 (NCI4th)— DSS custody—change of foster parents—adoption petition not filed—no authority in trial court**

The trial court should not have entertained the guardian ad litem's request for relief from DSS's alleged abuse of discretion in removing a child from one foster home to another for possible adoption where no adoption petition had been filed.

**Am Jur 2d, Adoption §§ 111, 117, 129, 130.**

Appeal by the attorney advocate for the minor child and by the Mecklenburg County Department of Social Services from order entered 27 September 1995 by Judge Yvonne Mims Evans in Mecklenburg County District Court. Heard in the Court of Appeals 31 October 1996.

*Alan B. Edmonds, Associate County Attorney, Mecklenburg County Department of Social Services, for petitioner-appellant/appellee.*

*W. Frank Porter, P.A., by Lisa C. Bell, Attorney Advocate for respondent-appellant/appellee Guardian Ad Litem for minor child.*

WALKER, Judge.

N.A., a minor child, was born addicted to crack cocaine and HIV positive on 12 September 1992 in Mecklenburg County. On 15 September 1992, the Mecklenburg County Department of Social Services (DSS) filed a juvenile petition alleging that N.A. was neglected and dependent. She was subsequently placed in the foster home of Jill Johnson and Sonja Austin. N.A. and her older half brother, M.A., were adjudicated neglected and dependent on 1 December 1992.

On 8 July 1994, the trial court terminated the parental rights of both biological parents of N.A. and M.A., clearing the way for their adoption. M.A. was then placed in the foster-adopt home of Franklin and Sharkeeta Miller (the Millers). On 12 October 1994, the adoption committee of the DSS voted, pursuant to N.C. Gen. Stat. § 7A-659(f) (1995), to move N.A. from her current foster home to the Millers' home in order that the Millers could proceed to adopt her as well as M.A. There is no evidence in the record, however, that the Millers had filed an adoption petition with respect to N.A.

On 13 October 1994, N.A., through her guardian ad litem, filed a motion for an emergency hearing alleging the adoption committee abused its discretion in selecting the Millers as the adoptive parents of N.A., and requested a preliminary injunction prohibiting the DSS from removing N.A. from her current foster home. At a hearing held on 7 November 1994, the trial court granted the preliminary injunction and scheduled the matter for 6 January 1995. After considering the extensive testimony presented at the hearing, the trial court concluded that it was in the best interest of N.A. to remain in the foster home of Jill Johnson and Sonja Austin, but that the DSS had not abused its discretion in its decision to move N.A. to the Millers' home. The court also refused to issue a permanent injunction prohibiting the DSS from removing N.A. from her current foster home. Both the guardian ad litem and the DSS appealed this order, and on 4 October 1995, the trial court granted the guardian ad litem's request for an injunction to prevent N.A. from being moved from her current foster home pending this appeal.

[1] On appeal, the guardian ad litem argues that the trial court erred in failing to find that the DSS abused its discretion in selecting the Millers as the adoptive parents of N.A., in failing to find the DSS's decision contrary to the best interests of N.A., and in failing to issue a permanent injunction prohibiting the DSS from moving N.A. from her current foster home. On the other hand, the DSS contends that the trial court erred in concluding that it was in N.A.'s best interest to remain in her current foster home.

According to N.C. Gen. Stat. § 7A-289.33 (1995), the effect of an order terminating parental rights is set forth as follows:

[i]f the child had been placed in the custody of . . . a county department of social services or licensed child-placing agency and is in the custody of the agency at the time of the filing of the petition . . . that agency shall, upon entry of the order terminating parental rights, acquire all of the rights for placement of the child as the agency would have acquired had the parent whose rights are terminated released the child to that agency pursuant to the provisions of Part 7 of Article 3 of Chapter 48 of the General Statutes . . . .

The provisions of Chapter 48 referred to above, N.C. Gen. Stat. § 48-3-705(b)(1) and (2) (1995), state that upon execution, a relinquishment of parental rights by a parent or guardian entitled to place a minor child for adoption vests legal and physical custody

IN RE ASBURY

[125 N.C. App. 143 (1997)]

in the agency to whom the rights are relinquished, and that the agency may place the minor for adoption with prospective adoptive parents.

In the present case, since N.A. was in the DSS's custody when her parents' rights were terminated, legal and physical custody of N.A. vested in the DSS upon the trial court entering the order of termination. Our Supreme Court, in *Oxendine v. Dept. of Social Services*, 303 N.C. 699, 707, 281 S.E.2d 370, 375 (1981), has stated that "[l]egal custody never passes to any foster parents charged with the duty of caring for and supervising [a] child. Foster parents are given only physical custody, which the department or agency having legal custody is free to revoke at any time." Thus, when legal and physical custody of N.A. vested in the DSS, it was then authorized to proceed in its discretion with placing N.A. for adoption, and the trial court had no authority to interfere with the DSS's decision to place N.A. with the Millers.

[2] Jurisdiction in adoption cases lies exclusively with the clerk of the superior court. N.C. Gen. Stat. § 48-2-100(a) (1995). Because no adoption petition appears to have been filed in this case and the guardian ad litem was seeking only to prohibit the DSS from moving N.A. from one foster home to another, the trial court should not have entertained the guardian ad litem's request for relief from the DSS's alleged abuse of discretion, or a motion for a permanent injunction. Once an adoption petition has been filed, according to N.C. Gen. Stat. § 7A-659(f),

> [a]ny issue of abuse of discretion by the county department or child-placing agency in the selection process must be raised by the guardian ad litem within 10 days following the date the agency notifies the court and the guardian ad litem in writing of the filing of the adoption petition.

Thus, upon the filing of an adoption petition, the guardian ad litem has ten days from the date written notice of the petition is filed to challenge the DSS's selection process before the clerk of the superior court.

Notwithstanding the question of the trial court's jurisdiction regarding custody of N.A., we need not address this issue further as the trial court refused to interfere with the DSS's decision to place N.A. with the Millers, and the issue of jurisdiction was not raised in either parties' brief.

The injunction entered by the trial court on 4 October 1995 is dissolved and the case is remanded in order that the DSS may proceed with the placement of N.A.

Remanded.

Judges LEWIS and SMITH concur.