IN THE MATTER OF: I.T.P-L., A MINOR CHILD

No. COA08-622

(Filed 16 December 2008)

**1. Appeal and Error— appealability—failure to sign initial notice of appeal—untimely amended notice of appeal—writ of certiorari**

The motions filed on 26 June 2008 by juvenile's guardian ad litem for the juvenile and on 14 July 2008 by petitioner seeking to dismiss respondents' appeals for failure to abide by N.C. R. App. P. 3A are denied because: (1) although neither respondent signed

the initial notice of appeal and the amended notices of appeal were filed outside the thirty-day deadline imposed by N.C.G.S. § 7B-1001(b), the Court of Appeals exercised its discretion under N.C. R. App. P. 21(a)(1) to allow respondent parents' petitions for writ of certiorari to permit consideration of their appeal on the merits so as to avoid penalizing respondents for their attorneys' errors; and (2) DSS timely filed its notice of appeal on 31 March 2008 prior to the 5 April 2008 deadline imposed by N.C.G.S. § 7B-1001(b), and thus DSS's petition for writ of certiorari was unnecessary and dismissed.

## 2. Termination of Parental Rights— subject matter jurisdiction—failure to issue summons naming juvenile as respondent

The trial court had subject matter jurisdiction over the termination of parental rights case even though no summons was issued naming the juvenile as a respondent as required by N.C. G.S. § 7B-1106 because: (1) even if a summons does not name the juvenile as a respondent, the trial court will retain subject matter jurisdiction over the termination proceeding where the caption of an issued summons refers to the juvenile by name and a designated representative of the juvenile certifies the juvenile was served with the petition; and (2) the record showed the caption of the summons had the juvenile's name and also reflected that copies of the summons and petition were served on the juvenile's guardian ad litem.

## 3. Termination of Parental Rights— grounds—felony assault

The trial court did not err by concluding that grounds existed to terminate respondent mother's parental rights based on a finding that the parent has committed a felony assault that resulted in serious bodily injury to the child, another child of the parent, or other child residing in the home under N.C.G.S. § 7B-1111(a)(8) because: (1) respondent did not assign error to the findings of fact, and thus they are presumed to be supported by competent evidence and are binding on appeal; and (2) respondent did not assign error to the pertinent conclusion of law thus precluding its review.

## 4. Termination of Parental Rights— best interests of child—abuse of discretion standard

The trial court did not abuse its discretion by determining that it was in the best interest of the child to terminate respond-

ent mother's parental rights because of: (1) respondent's violent and inconsistent behavior, inability to parent appropriately, and inability to follow the recommendations of medical personnel to improve her mental health and parenting abilities; and (2) the minor child's young age, the fact that she has been in DSS custody almost her whole life, and her need for permanency.

**5. Termination of Parental Rights— appointment of guardian ad litem for parent—timeliness**

The trial court did not err in a termination of parental rights case by allegedly failing to timely appoint respondent mother a guardian ad litem under N.C.G.S. § 7B-1101.1(c) because: (1) the trial court appointed a guardian ad litem for respondent seventeen days after the petition for termination was filed and more than three months before the first hearing in the termination proceeding took place; and (2) although respondent contends N.C.G.S. § 7B-1101.1(c) required the trial court to have appointed her a guardian ad litem when the minor child was first taken into DSS custody, the statute only mandates timely appointment of a guardian ad litem during a termination of parental rights proceeding.

**6. Appeal and Error— preservation of issues—failure to argue—failure to cite legal authority**

The assignments of error that respondent father failed to argue or support with legal authority are deemed abandoned under N.C. R. App. P. 28(b)(6).

**7. Termination of Parental Rights— placement of minor child—legal and physical custody vested in DSS**

The trial court lacked jurisdiction to place the minor child in a termination of parental rights case, and the trial court's order placing her with her maternal grandmother must be vacated, because: (1) the minor child was in the custody of DSS when the trial court terminated respondents' parental rights, and thus legal and physical custody of the minor child vested in DSS upon the termination; and (2) when legal and physical custody of the minor child vested in DSS, DSS was then authorized to proceed in its discretion with placing the minor child.

Appeal by Petitioner and Respondents from order entered 28 February 2008 by Judge Carol Jones Wilson in Duplin County District Court. Heard in the Court of Appeals 15 September 2008.

*Elizabeth Myrick Boone for Petitioner Duplin County Department of Social Services.*

*Winifred H. Dillon for Respondent-Father.*

*Patricia Kay Gibbons for Respondent-Mother.*

*Pamela Newell Williams for the Juvenile's Guardian as Litem.*

STEPHENS, Judge.

Respondent-Mother ("Mother") and Respondent-Father ("Father") (collectively "Respondents") are the biological parents of I.T.P-L. ("Ivy"),[1] born in 2006. Mother has four other children under the age of seven who have been removed from her care due to abuse, neglect, and dependency. Father is the biological father of two of the four children, and the children have been removed from his care as well. In 2004, a report prepared by Sampson Regional Hospital indicated that two of the children had numerous lacerations, marks, and bruises at various stages of healing. The hospital staff also indicated that Respondents' report of how the injuries occurred was not consistent with the injuries. In October 2005, Respondents entered Alford pleas[2] to felony child abuse and were placed on three years supervised probation after having served ten months in jail. Under the terms of the pleas, Mother was not to have contact with minor children unless agreed to by the Duplin County Department of Social Services ("DSS") and Father was not to reside in any home with a minor child. The maternal grandmother has guardianship of all four of the children.

In violation of Father's probation, Respondents had been living together with Ivy since her birth.[3] On 25 September 2006, when Ivy was two months old, Mother contacted DSS because of a hostile verbal altercation with Father. Mother advised DSS that Father had taken Ivy from her at night without milk, blankets, or supplies. When DSS responded to Mother's home, Father announced that he was leaving the residence with Ivy. After a lengthy standoff, Father agreed to leave Ivy with Mother.

---

1. A pseudonym has been used to protect the identity of the child.

2. "[A]n 'Alford plea' constitutes a guilty plea in the same way that a plea of *nolo contendere* or no contest is a guilty plea." *State v. Alston,* 139 N.C. App. 787, 792, 534 S.E.2d 666, 669 (2000) (quotation marks and citation omitted).

3. The record is silent as to whether Mother had obtained permission from DSS to have contact with Ivy.

IN RE I.T.P-L.

[194 N.C. App. 453 (2008)]

On 26 September 2006, DSS filed a juvenile petition alleging that Ivy was neglected and dependent, and the trial court entered a non-secure custody order granting legal and physical custody of Ivy to DSS. Although DSS attempted to place Ivy with the maternal grandmother, who was present during the altercation the previous day, the maternal grandmother refused as she "had her hands full" with Mother's four other children. DSS placed Ivy in foster care. By orders entered 20 October and 1 November 2006, the trial court continued nonsecure custody of Ivy with DSS.

On 26 November 2006, the trial court adjudicated Ivy neglected and dependent. The order placed the juvenile in the legal custody of DSS, giving DSS "full responsibility for the placement and care of the juvenile." Respondents were ordered to obtain mental health assessments and follow any recommendations, complete anger management classes through U-Care, comply with their probation judgments, and have no visitation with Ivy.

Based on a mental health evaluation performed on Mother by Michael B. Jones of Tar Heel Human Services in January 2007, Mother was diagnosed with Antisocial Personality Disorder and mild mental retardation. The report recommended that she be involved in outpatient therapy and indicated that "the Court System and Department of Social Services should consider the overwhelming evidence questioning [Mother's] need for assistance in parenting or ability to parent." Mother submitted to a second evaluation with Scott Allen of Waynesborough Psychological Services in April 2007. The report from that evaluation concurred with the above-stated observation and concluded that "it is unlikely that [Mother] will be capable of providing a safe and healthy environment for her children."

In a review order entered 8 May 2007, the trial court found, *inter alia*, that Respondents had moved but had not advised DSS of their new address, had attended some anger management classes but had not completed them, had not contacted DSS or attended appointments at DSS since January 2007, and had not contacted their probation officers or paid their probation fees. The trial court continued custody with DSS.

On 12 May 2007, Respondents got into an argument with each other. Mother put a pan of grease on the stove, heated it up, and threw the hot grease on Father. He was transported to Duplin General Hospital with burns to the left side of his body and was later transferred to the burn unit at UNC Hospitals in Chapel Hill. Mother was

arrested and placed in the Duplin County Jail. She pled guilty and received a prayer for judgment.

At a permanency planning hearing on 25 July 2007, the trial court found, *inter alia*, that Respondents had not completed anger management classes and, despite Mother's attack, were still residing together. Reunification efforts with Respondents were terminated and the permanent plan for Ivy was changed from reunification to adoption. Custody of Ivy remained with DSS, and Ivy remained in foster care.

On 24 August 2007, DSS filed a petition to terminate Respondents' parental rights to Ivy. On motion by DSS, a guardian *ad litem* was appointed for Mother on 10 September 2007.

After a hearing on 6 February 2008, the trial court entered an order on 28 February 2008, terminating Respondents' parental rights to Ivy. The trial court found and concluded that grounds existed to terminate Respondents' parental rights based on neglect under N.C. Gen. Stat. § 7B-1111(a)(1), placement of the juvenile with DSS for a continuous period of six months preceding the filing of the petition to terminate while willfully failing to pay a reasonable portion of the costs for the minor child under N.C. Gen. Stat. § 7B-1111(a)(3), and commission of a felony assault that resulted in serious bodily injury to another child of the parent or other child residing in the home under N.C. Gen. Stat. § 7B-1111(a)(8). The trial court then found and concluded that it would be in the child's best interests for Respondents' parental rights to be terminated. The order granted legal and physical custody of Ivy to DSS but ordered the juvenile be placed with her maternal grandmother.

On 22 February 2008, Petitioner filed a motion to set aside and stay the portion of the trial court's order placing the juvenile with her maternal grandmother. The trial court filed a temporary stay of that portion of its order on 6 March 2008, but dissolved the stay by order entered 25 April 2008. Petitioner and Respondents appeal from the trial court's termination order.

## I. Motions to Dismiss

**[1]** We first address two motions, one filed 26 June 2008 by the juvenile's Guardian *ad Litem* for the juvenile and one filed 14 July 2008 by Petitioner, seeking to dismiss Respondents' appeals for failure to abide by Rule 3A of our Rules of Appellate Procedure. In response to the motions to dismiss, Respondents filed petitions for writ of certiorari.

**IN RE I.T.P-L.**

[194 N.C. App. 453 (2008)]

Rule 3A provides:

> Any party entitled by law to appeal from a trial court judgment or order rendered in a case involving termination of parental rights and issues of juvenile dependency or juvenile abuse and/or neglect, appealable pursuant to G.S. 7B-1001, may take appeal by filing notice of appeal with the clerk of superior court and serving copies thereof upon all other parties in the time and manner set out in Chapter 7B of the General Statutes of North Carolina. Trial counsel or an appellant not represented by counsel shall be responsible for filing and serving the notice of appeal in the time and manner required.

N.C. R. App. P. 3A(a). Pursuant to N.C. Gen. Stat. § 7B-1001(b), "notice of appeal shall be given in writing . . . and shall be made within 30 days after entry and service of the order" from which the party is appealing. N.C. Gen. Stat. § 7B-1001(b) (2007). "It is well established that '[f]ailure to give timely notice of appeal . . . is jurisdictional, and an untimely attempt to appeal must be dismissed.' " *In re A.L.*, 166 N.C. App. 276, 277, 601 S.E.2d 538, 538 (2004) (quoting *In re Lynette H.*, 323 N.C. 598, 602, 374 S.E.2d 272, 274 (1988)). Rule 3A further states, "[i]f the appellant is represented by counsel, both the trial counsel and appellant must sign the notice of appeal, and the appellant shall cooperate with counsel throughout the appeal." N.C. R. App. P. 3A(a). The signature requirement of Rule 3A provides record evidence that the appellant desired to pursue the appeal, understood the nature of the appeal, and cooperated with counsel in filing the notice of appeal. *See Hummer v. Pulley, Watson, King & Lischer, P.A.*, 140 N.C. App. 270, 536 S.E.2d 349 (2000) (noting that defendants' counsel's signature on a notice of appeal from an order granting sanctions indicated participation in the appeal).

Here, the trial court entered its order terminating Respondents' parental rights to Ivy on 28 February 2008, and the order was served on Respondents by depositing a copy in the United States mail on 6 March 2008. Accordingly, the deadline for filing notice of appeal from the trial court's order was 5 April 2008. Respondents both filed notices of appeal on 26 March 2008, within the statutory period. However, neither Respondent signed the initial notice of appeal. Respondents filed amended notices of appeal bearing their signatures, Father on 8 April 2008 and Mother on 25 April 2008, outside the thirty-day deadline imposed by N.C. Gen. Stat. § 7B-1001(b). As proper and timely notice of appeal is jurisdictional, we must dismiss Respondents' appeal. *A.L.*, 166 N.C. App. 276, 601 S.E.2d 538.

Nevertheless, as the timely, albeit incomplete, notices of appeal together with the amended notices of appeal provide record evidence that Respondents desired to pursue the appeal, understood the nature of the appeal, and cooperated with counsel in filing the notice of appeal, we exercise our discretion pursuant to N.C. R. App. P. 21(a)(1) and allow Respondents' petitions for writ of certiorari to permit consideration of their appeals on the merits so as to avoid penalizing Respondents for their attorneys' errors.[4]

On 14 July 2008, DSS, concerned its notice of appeal might have been untimely, filed a petition for writ of certiorari in this matter. However, DSS filed its notice of appeal on 31 March 2008, prior to the 5 April 2008 deadline imposed by N.C. Gen. Stat. § 7B-1001(b). As DSS timely filed notice of appeal, DSS's petition for writ of certiorari is unnecessary and is thus dismissed.

## II. Subject Matter Jurisdiction

[2] Respondents first argue that the trial court lacked subject matter jurisdiction over the termination proceedings because no summons was issued naming the juvenile as a respondent as required by N.C. Gen. Stat. § 7B-1106.

This Court has held that the failure to issue a summons regarding the juvenile in a termination of parental rights proceeding deprives the trial court of subject matter jurisdiction. *In re C.T.*, 182 N.C. App. 472, 643 S.E.2d 23 (2007). This Court later construed *C.T.* to mean that the failure to issue a summons to the juvenile in a termination of parental rights proceeding deprives the trial court of subject matter jurisdiction. *In re S.F.*, 190 N.C. App. 779, 660 S.E.2d 924 (2008) (citing *In re K.A.D.*, 187 N.C. App. 502, 653 S.E.2d 427 (2007)). However, even if a summons does not name the juvenile as a respondent, the trial court will retain subject matter jurisdiction over the termination proceeding where the caption of an issued summons refers to the juvenile by name and a designated representative of the juvenile certifies the juvenile was served with the petition. *See In re J.A.P., I.M.P.*, 189 N.C. App. 683, 659 S.E.2d 14 (2008) (holding that service of the summons on the guardian *ad litem's* attorney advocate combined with naming the juvenile in the caption of the summons is sufficient to establish subject matter jurisdiction).

---

4. Additionally, Father's Motion to Amend Petition for Writ of Certiorari to allow him to file a Verification of the original petition, as required by N.C. R. App. P. 21(c), filed 11 July 2008, is hereby allowed.

In *In re S.D.J.*, 192 N.C. App. 478, 665 S.E.2d 818 (2008), this Court concluded that the trial court had subject matter jurisdiction where, even though a summons was not issued to the juvenile, "the captions of the summonses naming the parents as respondents state[d] the name of the juvenile, and the guardians ad litem for the juvenile certified that they accepted service of the petition on the juvenile's behalf[.]" *Id.* at 481, 665 S.E.2d at 821.

In *In re N.C.H., G.D.H., D.G.H.*, 192 N.C. App. 445, 665 S.E.2d 812 (2008), the record contained summonses captioned in the names of the juveniles and certifications from the guardian *ad litem* for the juveniles' that she was served with copies of the summonses. This Court found that, in accordance with *J.A.P.* and *S.D.J.*, the trial court had subject matter jurisdiction over the proceedings.

Here, the record before us shows a summons captioned as follows: "In the Matter of: [I.T.P-L.]" The record also reflects that copies of the summons and petition were served on the juvenile's guardian *ad litem*, Patrick Giddeons, at the Duplin County Courthouse. We find no significant distinctions between the facts of this case and those in *S.D.J.* or *N.C.H.* Therefore, in accordance with our holdings in those cases, we conclude the trial court had subject matter jurisdiction over these proceedings. Respondents' arguments are overruled.

### III. Grounds for Termination

**[3]** By various assignments of error, Mother argues the trial court erred in its conclusion that grounds exist to terminate her parental rights.

A termination of parental rights proceeding involves a two-stage process. *In re Blackburn*, 142 N.C. App. 607, 543 S.E.2d 906 (2001) (citation omitted). The initial stage is the adjudicatory stage whereby the petitioner must establish by clear, cogent, and convincing evidence that at least one of the statutory grounds for termination listed in N.C. Gen. Stat. § 7B-1111 exists. N.C. Gen. Stat. § 7B-1109 (2007); *In re Anderson*, 151 N.C. App. 94, 564 S.E.2d 599 (2002) (citation omitted). A finding of any one of the grounds enumerated in N.C. Gen. Stat. § 7B-1111 will support a trial court's order of termination. *A Child's Hope, LLC v. Doe*, 178 N.C. App. 96, 630 S.E.2d 673 (2006). Appellate review of a trial court's determination at the adjudicatory stage is whether the trial court's findings of fact are based upon clear, cogent, and convincing evidence and whether the findings support the conclusions of law. *In re Pope*, 144 N.C. App. 32, 547 S.E.2d 153,

**IN RE I.T.P-L.**

[194 N.C. App. 453 (2008)]

*aff'd*, 354 N.C. 359, 554 S.E.2d 644 (2001). "Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal." *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). Furthermore, on appeal, the scope of review is limited to those issues presented by assignment of error in the record on appeal. N.C. R. App. P. 10(a).

The trial court may terminate parental rights upon a finding that the parent "has committed a felony assault that results in serious bodily injury to the child, another child of the parent, or other child residing in the home[.]" N.C. Gen. Stat. § 7B-1111(a)(8).

In its order terminating Mother's parental rights, the trial court made the following findings of fact:

19. The respondent mother also took an Alford plea to felony child abuse on or about October 18, 2005, and under the terms of her probation is not to have contact with minor children unless agreed to by the Duplin County Department of Social Services.

. . . .

22. The respondent mother and the respondent father were incarcerated from January 2005 through October 2005 for felony child abuse. They both continue to deny that they had anything to do with the injuries inflicted on those minor children.

As Mother did not assign error to these findings of fact, the findings are presumed to be supported by competent evidence and are binding on appeal. *Koufman*, 330 N.C. 93, 408 S.E.2d 729. Based on these findings of fact, the trial court concluded, *inter alia*:

6. The respondent parents have committed a felony assault that resulted in serious bodily injury to another child in their care.

The trial court's findings of fact support this conclusion of law. Furthermore, Mother did not assign error to this conclusion of law, thus precluding review of the conclusion on appeal. N.C. R. App. P. 10(a). Accordingly, the trial court did not err in determining that grounds exist to terminate Mother's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(8). Having concluded that at least one ground for termination of parental rights exists, we need not address the additional grounds for termination found by the trial court. *In re B.S.D.S.*, 163 N.C. App. 540, 594 S.E.2d 89 (2004). Mother's argument is overruled.

IN RE I.T.P-L.

[194 N.C. App. 453 (2008)]

## IV. Best Interests of the Child

[4] Mother next argues that the trial court erred in determining that it was in the best interests of the child to terminate Mother's parental rights.

"If the trial court determines that grounds for termination exist, it proceeds to the dispositional stage, and must consider whether terminating parental rights is in the best interests of the child." *Anderson*, 151 N.C. App. at 98, 564 S.E.2d at 602 (citation omitted).

In making this determination, the court shall consider the following:

(1) The age of the juvenile.

(2) The likelihood of adoption of the juvenile.

(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.

(4) The bond between the juvenile and the parent.

(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.

(6) Any relevant consideration.

N.C. Gen. Stat. § 7B-1110(a) (2007). A trial court's determination at the dispositional stage is reviewed on appeal for abuse of discretion. *Anderson*, 151 N.C. App. 94, 564 S.E.2d 599.

The trial court made the following relevant findings of fact regarding the best interests of the child:

14. The minor child has been in foster care since September 26, 2006 due to the respondent mother and the respondent father providing an injurious environment due to a hostile verbal altercation between the parties while the child was in the home. The minor child remains in the same placement she has been in since she was placed in foster care.

. . . .

21. The respondent mother has a history of mental illness and violent behavior. . . .

. . . .

**IN RE I.T.P-L.**

[194 N.C. App. 453 (2008)]

23. The Department of Social Services has a long history with respondent mother dating back to 2001 after her first child was born in regard to abuse and neglect. The respondent mother has a long history of violent behavior and instability.

. . . .

25. The . . . Department of Social Services had serious concerns about the mental stability of the respondent mother . . . during the investigation. . . .

. . . .

28. There are numerous concerns about the violent tendencies of the respondent mother and her lack of truthfulness. The respondent mother admitted that she was kicked out of high school for stabbing someone who "bothered her."

. . . .

47. The conduct of the respondent mother has been such as to demonstrate that she did not provide the degree of care which will promote the healthy and orderly, physical and emotional well-being of the minor child.

. . . .

49. The minor child is in need of a permanent plan of care at the earliest possible age, which can be obtained only by the severing of the relationship between the child and the respondent mother by termination of parental rights.

. . . .

54. It is in the best interest of the minor child that the parental rights of [Mother] be terminated.

As Mother did not assign error to findings of fact numbers 21, 28, 47, 49, and 54, these findings are binding on appeal. *Koufman,* 330 N.C. 93, 408 S.E.2d 729. Furthermore, a thorough review of the record reveals that findings of fact numbers 14, 24, and 25 are supported by clear, cogent, and convincing evidence. Based on these findings of fact, the trial court concluded:

9. It is in the best interest of the minor child that the parental rights of [Mother] be terminated.

Mother argues that she "presented ample evidence in her state-ment of facts that she was not neglecting the minor child when the child was removed by DSS" and that "there was no clear, cogent, or convincing evidence of neglect or abuse." However, as stated above, the trial court had sufficient grounds to terminate Mother's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(8), and thus, Mother's argument is misplaced.

Given the abundant evidence of Mother's violent and inconsistent behavior, inability to parent appropriately, and inability to follow the recommendations of medical personnel to improve her mental health and parenting abilities, as well as Ivy's young age, the fact that she has been in DSS custody almost her whole life, and her need for perma-nency, we conclude the trial court did not abuse its discretion in con-cluding that it was in Ivy's best interests to terminate Mother's parental rights. Accordingly, Mother's argument is overruled.

V. Appointment of Guardian ad Litem for Mother

[5] Mother next argues that the trial court erred in failing to timely appoint her a guardian ad litem pursuant to N.C. Gen. Stat. § 7B-1101.1(c).

N.C. Gen. Stat. § 7B-1101.1(c) mandates appointment of a guardian ad litem to represent a parent in proceedings to termi-nate that parent's parental rights

if the court determines that there is a reasonable basis to believe that the parent is incompetent or has diminished capacity and cannot adequately act in his or her own interest.

N.C. Gen. Stat. § 7B-1101.1(c) (2007).

Here, the petition to terminate Mother's parental rights was filed on 24 August 2007. On 7 September 2007, DSS filed a Motion for Appointment of a Guardian ad Litem for Mother and the trial court appointed a guardian ad litem for Mother on 10 September 2007. There was no court hearing on the termination proceeding sched-uled until 31 October 2007, and that hearing was continued until 12 December 2007. Thus, the trial court appointed a guardian ad litem for Mother seventeen days after the petition for termination was filed and more than three months before the first hearing in the termination proceeding took place. Mother argues that N.C. Gen. Stat. § 7B-1101.1(c) required the trial court to have appointed her a guardian ad litem when Ivy was first taken into DSS custody. We

disagree. N.C. Gen. Stat. § 7B-1101.1(c) only mandates timely appointment of a guardian *ad litem* during a termination of parental rights proceeding. We thus hold that the trial court complied with the statutory mandate in N.C. Gen. Stat. § 7B-1101.1(c). Mother's argument is overruled.

## VI. Assignments of Error Deemed Waived

[6] Father set out twenty-two assignments of error in the Record, but argues only one of these in his brief to this Court.[5] The assignments of error not argued or supported by legal authority in Father's brief are deemed abandoned. N.C. R. App. P. 28(b)(6).

## VII. Subject Matter Jurisdiction to Place the Child

[7] Petitioner argues that, pursuant to N.C. Gen. Stat. § 7B-1112, since DSS had legal and physical custody of Ivy when the trial court terminated Respondents' parental rights, DSS retained legal and physical custody of the child and, thus, had the exclusive authority to place the child.

Pursuant to N.C. Gen. Stat. § 7B-1112:

> If the juvenile had been placed in the custody of . . . a county department of social services or licensed child-placing agency and is in the custody of the agency at the time of the filing of the petition or motion, including a petition or motion filed pursuant to G.S. 7B-1103(6), that agency shall, upon entry of the order terminating parental rights, acquire all of the rights for placement of the juvenile as the agency would have acquired had the parent whose rights are terminated released the juvenile to that agency pursuant to the provisions of Part 7 of Article 3 of Chapter 48 of the General Statutes, including the right to consent to the adoption of the juvenile.

N.C. Gen. Stat. § 7B-1112(1) (2007). Part 7 of Article 3 of Chapter 48 provides:

> [A] relinquishment by a parent or guardian . . . to place a minor for adoption:
>
> (1) Vests legal and physical custody of the minor in the agency; and

---

5. This assignment of error has been addressed in this opinion in Section II. Subject Matter Jurisdiction.

(2) Empowers the agency to place the minor for adoption with a prospective adoptive parent selected in the manner specified in the relinquishment.

N.C. Gen. Stat. § 48-3-705(b) (2007).

In applying the above-stated law in *In re Asbury*, 125 N.C. App. 143, 479 S.E.2d 229 (1997),[6] this Court determined that since the minor child was in the Mecklenburg County Department of Social Services' custody when her parents' rights were terminated, legal and physical custody of the child vested in the Department of Social Services upon the trial court's entering the order of termination. When legal and physical custody of the child vested in the Department of Social Services, the Department of Social Services was then authorized to proceed in its discretion with placing the child for adoption, and the trial court had no authority to interfere with the Department of Social Services' decision to place the child.

Here, DSS was granted nonsecure custody of Ivy on 26 September 2006. The trial court entered orders on 20 October and 1 November 2006 continuing nonsecure custody with DSS. On 26 November 2006, the trial court adjudicated Ivy neglected and dependent and ordered that "legal custody of the juvenile shall remain with [DSS] with [DSS] having full responsibility for the placement and care of the juvenile." Subsequent review and permanency planning orders continued legal custody with DSS. The order terminating Respondents' parental rights found as fact that

6. The Petitioner in this action is the duly constituted Duplin County Department of Social Services, which has been given legal and physical custody of the minor pursuant to N.C. Gen. Stat. § 7B-1103(a)(3).

As Ivy was in the custody of DSS when the trial court terminated Respondents' parental rights, legal and physical custody of Ivy vested in DSS upon the termination. Thus, when legal and physical custody of Ivy vested in DSS, DSS was then authorized to proceed in its discretion with placing Ivy. Accordingly, the trial court lacked jurisdiction to place Ivy and the trial court's order placing Ivy with her maternal grandmother must be vacated. In light of this conclusion, we need not reach Petitioner's remaining assignments of error.

---

6. *Asbury* applied N.C. Gen. Stat. § 7A-289.33 (1995), the previous version of N.C. Gen. Stat. § 7B-1112. However, the language of the two statutes is identical.

For the above-stated reasons, we

AFFIRM IN PART AND VACATE IN PART.

Judges McCULLOUGH and JACKSON concur.