IN THE MATTER OF: D.J.R.
No. COA09-334
Court of Appeals of North Carolina
Filed September 1, 2009
This case not for publication
Crawford & Crawford, LLP, by Heather J. Williams, for Petitioner-Appellee Alice Marie Bigler.
Rebekah W. Davis for Respondent-Appellant-Mother.
STEPHENS, Judge.

I. Procedural History
On 15 October 2008, Alice Marie Bigler ("Petitioner") filed a petition to terminate the parental rights of Tabitha N. J. ("Respondent") to her minor child, D.J.R. ("the child").[1] The matter was heard in Wayne County District Court between 24 and 26 November 2008.
The trial court found that grounds existed to terminate Respondent's parental rights pursuant to N.C. Gen. Stat. §§ 7B-1111(a)(6) and (7), and concluded that it was in the child's best interests to terminate Respondent's parental rights. By order entered 12 December 2008, the trial court terminated Respondent's parental rights. From that order, Respondent appeals.

II. Factual Background
Respondent is the biological mother of the child, born in January of 2005. The child has lived with Petitioner, who is the child's paternal grandmother, and Petitioner's husband (collectively, "the Biglers") since the child was three days old. The Biglers have had custody of the child pursuant to a consent order since 18 January 2005. Respondent also has a six-year-old son who is in the custody of Respondent's aunt.
The Biglers have been solely responsible for the care and custody of the child during the child's entire life. During the first 13 months of the child's life, Petitioner worked hard to involve Respondent in the life of the child. Petitioner took the child over to Respondent's residence three to four times a week to visit with Respondent and the child's father and involved Respondent in family get-togethers and holiday events. Petitioner would take the child with her to work and Petitioner told Respondent that she was welcome to visit the child any time at the residence where Petitioner was employed. Although Respondent initially visited the child at the residence, Respondent felt like Petitioner only wanted her around "to babysit [her] daughter while [Petitioner] worked" and she felt like she was a "free babysitter" so she stopped visiting the child at that location.
When the child was about nine months old, Petitioner's concerns regarding the cleanliness of Respondent's house started to increase. On one occasion when Petitioner took the child over to Respondent's house for a visit, Petitioner observed three or four pills on the child's highchair. Petitioner refused to leave the child with Respondent and told her to call Petitioner after the house had been baby-proofed so visits with the child could resume at her house. Respondent never called Petitioner to resume visits at her house. Petitioner continued to arrange visitations with the child for Respondent at locations other than at Respondent's home. Respondent testified that she did not propose her home as a place for visitation because her homes "have been less than desirable when it comes to children."
Respondent rejected some of Petitioner's attempts to set up visitation. On one occasion, Petitioner offered to pick up Respondent and take her to lunch at McDonald's with the child. Respondent said that she could not go as she would still be sleeping at 11:00 a.m., the time proposed by Petitioner. Respondent did not propose an alternate day or time for the visit. In December of 2007, Petitioner offered to set up visitation for Respondent as Petitioner was taking the child to Korea for the Christmas holiday. Respondent told her that she could not visit with the child as she was not feeling well and was going to bed early.
In January 2008, Petitioner met Respondent at CiCi's pizza for visitation with the child. This was the last scheduled visit Respondent had with the child prior to the termination hearing. In March of 2008, Petitioner was with the child in Wal-Mart when they saw Respondent briefly. At that time, Petitioner told Respondent that she wished to adopt the child. This was the last time Respondent saw the child prior to the termination hearing. At some point in 2008, the parties had planned to meet for visitation at Chuck E. Cheese's, but Petitioner cancelled the visit due to bad weather. Respondent did not attempt to reschedule the visit as she believed it was Petitioner's responsibility to do so.
In the two years prior to the termination hearing, Respondent lived in at least five different residences. Additionally, since the birth of the child, Respondent has had intimate relationships with at least 10 different men. Respondent was employed part-time on two occasions after the child's birth, received social security disability benefits of $622 per month in 2007 and $637 per month in 2008, and received food stamps. Respondent spent $300 per month for her cell phone service in 2007 and $100 per month in 2008. However, Respondent has never provided any financial support for the child. Respondent testified that she had not provided any financial support because she didn't have the money and because Petitioner never asked for any. Respondent never sent any cards to the child, only called Petitioner sporadically regarding the child, and Respondent's only gifts to the child have been as follows: a five-dollar bill for the child's first birthday; a 10-dollar bill for the child's second birthday; a small computer game, a small puzzle game, and a stuffed teddy bear for Christmas in 2007; and a necklace in October of 2008.
Respondent was diagnosed with bipolar disorder when she was 15 years old. Respondent did not consistently take her prescribed medication and stopped taking her medication altogether in 2006. After the birth of the child, Respondent saw Dr. Theresa Poole who confirmed Respondent's bipolar diagnosis and also diagnosed her with postpartum depression and borderline personality disorder. Respondent stopped seeing Dr. Poole in February of 2006. In June 2008, Respondent underwent a psychological evaluation with Ms. Kirstin Huffine. It was Ms. Huffine's opinion that Respondent suffers only from borderline personality disorder and not from bipolar disorder. Ms. Huffine also concluded that the results of the psychological testing she performed were invalid because the scales indicated that Respondent was not honest in her answers.
Respondent maintained a MySpace page which contained blogs about her romantic relationships and sex life. Respondent's 21 May 2008 posting stated, "Please god if your [sic] up there kill me tonight. I'm sick of life." Respondent's MySpace page also contained a video depicting bloody self-inflicted wounds and a tombstone with Respondent's name inscribed with "1983  2007[.]"

III. Discussion
We first address Respondent's petition for writ of certiorari, requesting that this Court grant certiorari and hear Respondent's appeal if Respondent's notice of appeal is deemed untimely.
Rule 3A provides that any party entitled to appeal from an order entered in a termination of parental rights case
may take appeal by filing notice of appeal with the clerk of superior court and serving copies thereof upon all other parties in the time and manner set out in Chapter 7B of the General Statutes of North Carolina. Trial counsel or an appellant not represented by counsel shall be responsible for filing and serving the notice of appeal in the time and manner required.
N.C. R. App. P. 3A(a). "[N]otice of appeal shall be given in writing . . . and shall be made within 30 days after entry and service of the order" from which the party is appealing. N.C. Gen. Stat. § 7B-1001(b) (2007). "Failure to give timely notice of appeal . . . is jurisdictional, and an untimely attempt to appeal must be dismissed." In re Lynette H., 323 N.C. 598, 602, 374 S.E.2d 272, 274 (1988) (quotation marks and citation omitted). Rule 3A further states that "[i]f the appellant is represented by counsel, both the trial counsel and appellant must sign the notice of appeal, and the appellant shall cooperate with counsel throughout the appeal." N.C. R. App. P. 3A(a). "The signature requirement of Rule 3A provides record evidence that the appellant desired to pursue the appeal, understood the nature of the appeal, and cooperated with counsel in filing the notice of appeal." In re I.T.P-L., ___ N.C. App. ___, ___, 670 S.E.2d 282, 285 (2008).
In this case, the trial court entered its order terminating Respondent's parental rights to the child on 12 December 2008 and the order was served on Respondent on 15 December 2008.[2] Accordingly, the deadline for filing notice of appeal from the trial court's order was 14 January 2009. Respondent filed notice of appeal on 8 January 2009, within the statutory period. However, Respondent did not sign the notice of appeal. Respondent filed an amended notice of appeal bearing her signature on 15 January 2009, outside the 30-day deadline imposed by N.C. Gen. Stat. § 7B-1001(b). As proper and timely notice of appeal is jurisdictional, we must dismiss Respondent's appeal. In re A.L., 166 N.C. App. 276, 601 S.E.2d 538 (2004). Nevertheless, we exercise our discretion pursuant to N.C. R. App. P. 21(a)(1) and allow Respondent's petition for writ of certiorari to permit consideration of her appeal on the merits. See I.T.P-L., ___ N.C. App. at ___, 670 S.E.2d at 285. ("[A]s the timely, albeit incomplete, notices of appeal together with the amended notices of appeal provide record evidence that Respondents desired to pursue the appeal, understood the nature of the appeal, and cooperated with counsel in filing the notice of appeal, we exercise our discretion pursuant to N.C. R. App. P. 21(a)(1) and allow Respondents' petitions for writ of certiorari . . . .").
Turning to the merits of Respondent's appeal, Respondent first argues that the trial court's conclusion that Respondent willfully abandoned the child for at least six consecutive months immediately preceding the filing of the termination petition is not supported by sufficient evidence or proper findings of fact. We disagree.
A termination of parental rights proceeding involves a two-stage process. In re Blackburn, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001). The initial stage is the adjudicatory stage whereby the petitioner must establish by clear, cogent, and convincing evidence that at least one of the statutory grounds for termination listed in N.C. Gen. Stat. § 7B-1111 exists. N.C. Gen. Stat. § 7B-1109(e)-(f) (2007); A Child's Hope, LLC v. Doe, 178 N.C. App. 96, 102, 630 S.E.2d 673, 677 (2006). A finding of any one of the grounds enumerated in N.C. Gen. Stat. § 7B-1111 is sufficient to support a trial court's order of termination. A Child's Hope, 178 N.C. App. at 102, 630 S.E.2d at 677. Appellate review of a trial court's determination at the adjudicatory stage is whether the trial court's findings of fact are based upon clear, cogent, and convincing evidence and whether the findings support the conclusions of law. In re Huff, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000), appeal dismissed and disc. review denied, 353 N.C. 374, 547 S.E.2d 9 (2001).
"If the trial court determines that grounds for termination exist, it proceeds to the dispositional stage, and must consider whether terminating parental rights is in the best interests of the child." In re Anderson, 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002). A trial court's determination at the dispositional stage is reviewed on appeal for abuse of discretion. Id.
N.C. Gen. Stat. § 7B-1111(a)(7) provides for termination of parental rights where "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition[.]" N.C. Gen. Stat. § 7B-1111(a)(7) (2007).
[A]bandonment imports any wilful or intentional conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child . . . . [I]f a parent withholds his presence, his love, his care, the opportunity to display filial affection, and wilfully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child . . .."
In re Apa, 59 N.C. App. 322, 324, 296 S.E.2d 811, 813 (1982) (quotation marks and citations omitted) (emphasis removed). In the instant case, since the petition for terminating Respondent's parental rights was filed on 15 October 2008, Respondent's behavior between 15 April and 15 October 2008 is determinative.
The trial court made the following findings of fact relevant to the court's conclusion that Respondent willfully abandoned the child as defined by N.C. Gen. Stat. § 7B-1111(a)(7):
10. That since the birth of the minor child [] Petitioner [] and her husband [] have had exclusive custody of the minor child. That it has been the sole responsibility of the Petitioner [] and her husband [] to care for the minor child and to raise the minor child. That since the birth of the minor child [] the Respondent/mother [] has not contributed substantial support for the benefit of the minor child and has not had a relationship with any consistency with the minor child. That since the birth of the minor child [] the only gifts [sic] given to the minor child by the Respondent/mother was a $10 bill on her 2nd birthday. During Christmas 2006, the Petitioner took the minor child [] to the Respondent/mother's then boyfriend's house. That the minor child and Petitioner only stayed about 30 minutes. During this period, the Respondent/mother gave the minor child [] a teddy bear and some small type game. That on or about October 7, 2008 while at the Wayne County Courthouse, the Respondent/mother offered some type of necklace to the Petitioner as a "gift" for the minor child. These are the only items of monetary value that the Respondent/mother has given the minor child [] during the minor child's life.
. . . .
14. The last time the Respondent/mother saw the minor child was in January 2008, and prior to that it was January 2007. That the Respondent/mother has taken no initiative to see the minor child and it has consistently been the Petitioner [] who has arranged for the Respondent/mother to see the minor child when the minor child has had contact with the Respondent/mother.
. . . .
22. The Respondent/mother has had the ability to provide some child support for the minor child during 2007 and during 2008 but failed to provide any child support in either 2007 or 2008.
. . . .
24. The Respondent/mother testified that she felt like the Petitioner only wanted her around as "a free babysitter" when the Respondent/mother should have welcomed the opportunity to be around her own child and to parent the child.
. . . .
26. When the Petitioner had to cancel a visit between the minor child and the Respondent/mother, the Respondent/mother took no steps to reschedule the visit because she felt like it was the Petitioner's sole responsibility to reschedule the visit.
. . . .
32. The Respondent/mother during 2007 spent $300 per month on her cell phone bill, but did not provide any child support for the minor child [].
33. The Respondent/mother changed her cell phone plan and reduced her cell phone bill to $100 per month during 2008, but still did not provide any child support for the minor child [].
Respondent challenges only findings of fact numbers 10, 14, 24, and 26 of the findings recited above, and only to the extent that the findings do not accurately reflect that Respondent "was not given an opportunity to visit the child consistently." Respondent testified at the hearing, and argues on appeal, that her strained relationship with Petitioner and the lack of a specific visitation schedule precluded her from exercising consistent visitation with the child. However, Respondent also testified that she felt it was Petitioner's responsibility to reschedule canceled visits, and that even though Respondent had an open invitation to visit the child where Petitioner worked, Respondent stopped visiting the child there because she felt like she was a "free babysitter." Furthermore, Petitioner testified that Respondent took no initiative to see the child, was unresponsive to some of Petitioner's attempts to schedule visitation with the child, and did not provide a home where the child could visit. As the trial court had the opportunity to observe the demeanor of the witnesses and to determine their credibility, it was the trial court's duty to determine the weight to be given the testimony and the reasonable inferences to be drawn therefrom. In re Whisnant, 71 N.C. App. 439, 441, 322 S.E.2d 434, 435 (1984).
The evidence in the record establishes that Respondent did not see the child in the six months prior to Petitioner's filing the petition to terminate parental rights. Although Petitioner canceled a scheduled visitation due to bad weather, Respondent never attempted to reschedule the visit. Furthermore, Respondent provided no financial support for the child during the relevant time period, even though she received disability checks, held a part-time job, and was able to spend $100 on cell phone service, because she "didn't have that much money" and because Petitioner "never asked me for any[.]" Moreover, Respondent did not send the child any cards, called only sporadically to inquire about her well-being, and the only gift Respondent gave the child in the six months prior to the filing of the petition was a necklace. Accordingly, we conclude that the challenged findings of fact are based on clear, cogent, and convincing evidence. As these findings, together with the unchallenged findings, plainly "evince[] a settled purpose to forego all parental duties and relinquish all parental claims to the child[,]" Apa, 59 N.C. App. at 324, 296 S.E.2d at 813 (quotation marks and citation omitted), these findings support the trial court's conclusion of law that Respondent willfully abandoned the child as defined by N.C. Gen. Stat. § 7B-1111(a)(7). Respondent's argument is overruled.
Although Respondent also argues that the trial court erred in concluding that grounds for termination existed under N.C. Gen. Stat. § 7B-1111(a)(6) in that Respondent "is incapable of providing for the proper care and supervision of the [child], such that the [child] is a dependent juvenile," N.C. Gen. Stat. § 7B-1111(a)(6), based on our holding, supra, we need not address this argument since a finding of any one of the grounds enumerated in N.C. Gen. Stat. § 7B-1111 is sufficient to support a trial court's order of termination. A Child's Hope, 178 N.C. App. at 102, 630 S.E.2d at 677.
In her remaining argument, Respondent contends the trial court abused its discretion in concluding that terminating her parental rights was in the best interests of the child. We disagree.
Factors to consider in determining a child's best interests include: (1) the child's age; (2) the likelihood of adoption; (3) the impact on the accomplishment of the permanent plan for the child; (4) the bond between the child and the parent; (5) the relationship between the child and a proposed adoptive parent; and (6) any other relevant consideration. N.C. Gen. Stat. § 7B-1110(a) (2007).
In this case, the trial court made specific findings regarding the age of the child and, additionally, made the following findings of fact relevant to the child's best interests:
5. The minor child []at the time of the filing of the Petition for Termination of Parental Rights, resided with her paternal grandmother, Petitioner . . . .
6. . . . . [T]he minor child has lived with the Petitioner [] and her husband [] since the minor child was three days old, and further the Petitioner and her husband [] have had custody of the minor child pursuant to a signed Court Order filed with the Wayne County District Court in File 06 CvD 112 on January 18, 2006.
. . . .
8. . . . . That the biological father of the minor child [] has previous to the filing of this Petition for Termination of Parental Rights signed a Consent to Adoption, giving his consent for the Petitioner [] and her husband [] to adopt the minor child . . . .
. . . .
13. Based upon the actions of the Respondent/mother and her lack of interest and involvement in the life of the minor child [] [t]he Respondent/mother [] is not capable of providing proper care for [the child] . . . .
. . . .
30. Once the Court found grounds existed for termination, the Guardian Ad Litem, Kimberly Connor Benton, recommended termination of the parental rights as it relates to the relationship between the Respondent/mother [] and the minor child [].
. . . .
34. The minor child [] need[s] permanency, and the Petitioner and her husband offer permanency and stability, and the Respondent/mother does not offer permanency or stability for the minor child [].
35. It is in the best interests of the minor child for the Respondent/mother's parental rights to be terminated at this time. The Petitioner [] and her husband [] can and do provide a safe, loving, and nurturing environment for the minor child []. The Petitioner [] and her husband [] deeply love and care for the minor child and are fully capable of continuing to provide a suitable loving home environment for the minor child []. The best interests of the minor child [] will be served by terminating the parental rights of the Respondent/mother [] and allowing the Petitioner [] and her husband [] in this cause to adopt the minor child [].
From these findings, it is clear that the trial court considered the factors set out in N.C. Gen. Stat. § 7B-1110(a). The record reveals that Respondent lacked motivation and interest in being a part of the child's life, and, in fact, had not exercised visitation with the child for approximately 10 months prior to the termination proceedings. Such evidence is properly considered in evaluating the bond between the child and the parent. Furthermore, it is uncontested that Petitioner and her husband provide a caring and loving environment for the child and that they intend to adopt the minor child if they are legally permitted to do so. Given that the child has been in the custody of Petitioner since she was three days old, and was almost four years old at the time of the hearing, the trial court found that the child was in need of permanency, which Respondent cannot provide. Having carefully reviewed the record, briefs and contentions of the parties, we can discern no abuse of discretion.
For the foregoing reasons, we affirm the trial court's order.
AFFIRMED.
Judges STROUD and ERVIN concur.
Report per Rule 30(e).
NOTES
[1] Although there was evidence that Petitioner filed a petition to terminate Respondent's parental rights and a petition to adopt in April of 2008, the record does not contain either petition and does not indicate the disposition of the petition to terminate.
[2] Although the record on appeal does not contain proof of service upon Respondent, the record contains the Guardian ad Litem's motion to dismiss Respondent's appeal, which was filed in the trial court but subsequently withdrawn, and which states that the order was served upon Respondent on 15 December 2008.